# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| JILL L. TREAT, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO. 1:08-CV-173** |
| | ) | |
| TOM KELLEY BUICK PONTIAC | ) | |
| GMC, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion for Protective Order to Maintain

Documents Submitted *In Camera* Under Seal, that Defendants Tom Kelley Buick Pontiac GMC,

Inc; 1469 Car Rental and Indiana Credit Center; Kelley Automotive Superstore, Inc; Kelley

Cars, Inc.; and Kelley Automotive Group, Inc., ("Kelley") filed on April 17, 2009. (Docket #

60.) For the following reasons, Kelley's motion will be GRANTED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Jill L. Treat, Cody W. Treat, and Tiffany L. Johnson filed this lawsuit against

Kelley on June 30, 2008, alleging claims of sexual harassment and employment discrimination

under Title VII of the Civil Rights Act as amended, 42 U.S.C. 2000; violations of the Equal Pay

Act of 1963; and a host of state law tort actions.[1]  (*See* Docket # 1.)  As the discovery

progressed, Plaintiffs filed a motion to compel answers to various requests for production and

interrogatories from Kelley.  (Docket # 42.)  The Court held a hearing on April 10, 2009; ruled

from the bench to grant in part and deny in part the motion; and subsequently issued an order

---

[1] The Plaintiffs' subsequently amended their complaint.  (Docket # 30.)  This Opinion and Order assumes the reader is familiar with the facts and circumstances of this case.

summarizing the Court's rulings.  (Docket ## 57-58.)

On April 17, 2009, and in accordance with the Court's Order, Kelley produced a privilege log identifying the documents they claim should be protected from discovery under the attorney-client privilege or the work product doctrine.  (Docket # 62.)  Kelley also filed a motion for a protective order to keep the documents under seal.  (Docket ## 60-61.)  The Plaintiffs filed a response brief in opposition to the motion for protective order, to which Kelley replied, making the motion ripe for ruling.

## II.  THE PARTIES' POSITIONS

Kelley puts the disputed documents into five categories, all generated during an investigation conducted by outside counsel following the Plaintiffs' EEOC charges.

The first category involves the notes prepared by outside counsel in preparation of Kelley's response to the Plaintiffs' EEOC charges.  This category encompasses outside counsel's handwritten notes concerning documents in the file, outside counsel's notes of interviews with various witnesses, and a draft of an affidavit by Dan Henderson which was never executed. (Defs.' Brief in Supp. of Mot. for Protective Or.  ("Defs.' Br.") 5–7.)  Kelley maintains that all this material falls under the attorney-client privilege and work product doctrine.

Next, Kelley maintains that outside counsel's notes taken during the EEOC's witness interviews were created in anticipation of litigation and are therefore protected under the work product doctrine.  (Defs.' Br. 7-8.)

Third, Kelley seeks to protect outside counsel's drafts of position statements and legal memoranda under both the attorney-client privilege and work product doctrine.  (Defs.' Br. 8.)

The fourth category of disputed documents include e-mail communications between

outside counsel and some Kelley employees seeking information in preparation of a position statement to the EEOC.[2]  (Defs. Br. 9.)

Finally, Kelley insists that facsimiles ("faxes") and emails between particular Kelley employees and outside counsel in response to the EEOC charge implicate both the attorney-client privilege and the work product doctrine.  (Defs.' Br. 9-10.)

The Plaintiffs object, first disputing the sufficiency of the privilege log's descriptions of the subject matter and explanations of why the documents are privileged.  (Resp. Br. 2.)  The Plaintiffs believe that the Court should order Kelley to produce all the documents because they produced an inadequate privilege log, and that in any event, they have failed to show good cause for a protective order.  (Resp. Br. 2.)  The Plaintiffs also argue that Kelley failed to meet their burden of establishing the elements of the asserted privileges on a document by document basis (Resp. Br. 3), and in particular, the documents pertaining to the internal investigation, witness interviews, and the draft version of the Henderson statement (Resp. Br. 4-6).  The Plaintiffs maintain that documents related to Kelley's investigation are not privileged and that Kelley has waived any protections by putting the investigation "at issue" in one of their affirmative defenses.

### III.  LEGAL STANDARDS

There are two well-known exceptions to the liberal discovery rules that are relevant to this discovery dispute: the attorney-client privilege and the work-product doctrine.  *Coachmen Indus. Inc. v. Kemlite*, No. 3:06-CV-160 CAN, 2007 WL 3256654, at *2 (N.D. Ind. Nov. 2, 2007) (citing *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999)).  The Court will

---

[2]The Court will combine the third and fourth categories since the same analysis applies to each.

discuss them in order.

## A. *Attorney-Client Privilege*[3]

"'The attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity for the purpose of obtaining legal advice.'" *Barton v. Zimmer, Inc.*, No. 1:06-CV-208, 2008 WL 80647, at *3 (N.D. Ind. Jan. 7, 2008) (quoting *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007)).

> More particularly, the elements of the attorney-client privilege are: "(1) where legal advice was sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection may be waived."

*Id.* (quoting *Long v. Anderson Univ.*, 204 F.R.D. 129, 134 (S.D. Ind. 2001) (citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997))). "Thus, 'communications made in the routine course of business, such as transmittal letters or acknowledgment of receipt letters, which disclose no privileged matters and which are devoid of legal advice or requests for such advice are not protected.'" *Id.* (quoting *Dometic Sales Corp. v. Intertherm, Inc.*, No. S87-81, 1988 WL 492342, at *10 (N.D. Ind. March 28, 1988)). "Only where the document or communication is primarily concerned with legal assistance does it come within the attorney-client privilege. Purely technical information is otherwise discoverable." *Id.* (internal quotation marks and citation omitted).

"Likewise, communications made by a lawyer will be protected if they either 'rest on confidential information obtained from the client [or] . . . would reveal the substance of a

---

[3] Because the Plaintiffs' claims arise under federal law, the federal common law of privilege applies. Fed. R. Evid. 501.

confidential communication by the client.'" *Id.* (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000)); *see also United States v. DeFazio*, 899 F.2d 626, 635 (7th Cir. 1990) ("Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence."); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 414-15 (N.D. Ill. 2006); *Midwestern Univ. v. HBO & Co.,* No. 96 C 2826, 1999 WL 32928, at *2 (N.D. Ill. Jan. 4, 1999) ("When a lawyer gives legal advice to the client it does not automatically trigger the attorney-client privilege. Rather, statements which would reveal the substance of the confidential communication are protected."); *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1210 (S.D. Ind. 1994) (collecting cases). "Thus, '[w]hen information is transmitted to an attorney with the intent that the information will be transmitted to a third party . . ., such information is not confidential.'" *Id.* (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).

"The party seeking to invoke the attorney-client privilege bears the burden of establishing all of the privilege's essential elements." *Id.* at *4 (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." *Id.* (internal quotation marks and citation omitted); *see also Avery Dennison Corp. v. UCB Films PLC*, No. 95 C 6351, 1998 WL 703647, at *2 (N.D. Ill. 1998); *Ziemack v. Cent. Corp.*, No. 92 C 3551, 1995 WL 314526, at *3 (N.D. Ill. 1995). "Moreover, '[t]he scope of the privilege should be strictly confined within the narrowest possible limits.'" *Id.* (quoting *Lawless*, 709 F.2d at 487); *Matter of Walsh*, 623 F.2d 489, 493 (7th Cir. 1980) ("As it is in derogation of the search for truth, the privilege must not be lightly created nor expansively construed.").

"E-mails, with sometimes different and multiple recipients and authors, add complexity to the analysis of the attorney-client privilege." *Id.* at *5 (citing *Thompson v. Chertoff*, No. 3:06-CV-004 RLM, 2007 WL 4125770, at *2 (N.D. Ind. Nov. 15, 2007)). "Email strands can span over several days, and they may have many different recipients and authors." *Id.* (internal quotation marks and citation omitted). "Moreover, some e-mails in which counsel are involved may contain factual information, which is not protected by the privilege, while others within the same strand may contain exclusively legal advice." *Id.* (citing *Thompson*, 2007 WL 4125770, at *2; *Muro v. Target Corp.*, 243 F.R.D. 301, 305 n.4 (N.D. Ill. 2007)); *see generally Upjohn,* 449 U.S. at 395-96 ("The client cannot be compelled to answer the question 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."); *Pippenger*, 883 F. Supp. at 1208 ("It is beyond question that the attorney-client privilege does not preclude the discovery of factual information. Only the communications and advice given are privileged; the underlying facts communicated are discoverable if they are otherwise the proper subject of discovery.").

"Nevertheless, under *Upjohn*, 449 U.S. at 395-96, the very fact that non-privileged information was communicated to an attorney may itself be privileged, even if that underlying information remains unprotected." *Id.* (citing *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007)). "As applied to e-mails, this means that even though one e-mail is not privileged, a second e-mail forwarding the prior e-mail to counsel might be privileged in its entirety." *Id.* (citation omitted). "In this respect, the forwarded material is similar to prior conversations or documents that are quoted verbatim in a letter to a party's attorney." *Id.* (internal quotation

marks and citation omitted).

## B. Work-Product Doctrine

"The work-product doctrine is a qualified privilege and is 'distinct from and broader than the attorney-client privilege.'" *Id.* (quoting *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613 (N.D. Ill. 2000) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975))). "For example, the work-product doctrine extends 'to protect material prepared by investigators for the lawyer.'" *Id.* (citing *Caremark*, 194 F.R.D. at 613).

"Memoranda based on oral statements of witnesses are 'the sort of material the draftsmen of the Rule 26 had in mind as deserving special attention.'" *Id.* at *6 (quoting *Caremark*, 194 F.R.D. at 613 (citing *Upjohn*, 449 U.S. at 400)). "In *Upjohn*, the Court reaffirmed the strong public policy underlying the work product doctrine and emphasized that forcing an attorney to disclose notes and memos of witness oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Id.* (quoting *Caremark*, 194 F.R.D. at 613 (citing *Upjohn*, 449 U.S. at 399)).

The work-product doctrine, stemming from *Hickman v. Taylor*, 329 U.S. 495 (1947), is codified in Federal Rule of Civil Procedure 26(b)(3) as follows:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Therefore, in order to come within the qualified protection from discovery created by Rule 26(b)(3), Kelley must show that the materials sought are: (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for Kelley or by or for a Kelley representative. *Barton*, 2008 WL 80647, at *6; (citing *Caremark,* 195 F.R.D. at 613-14; 8 Wright, Miller & Marcus, *Federal Practice And Procedure*: Civil 2D § 2024 (1994)).

If Kelley establishes the work-product privilege, it can still be overcome if the Plaintiffs show: (1) a substantial need for the materials, and (2) an inability to obtain the substantial equivalent of the information without undue hardship. *Id.* (citing *Caremark*, 195 F.R.D. at 614). "Even upon such a showing, however, 'the lawyer's mental processes are required to be protected from disclosure.'" *Id.* (quoting *Caremark*, 195 F.R.D. at 614).

"Finally, Rule 26(b)(3) divides work product into two categories: (1) 'opinion' work product, which reflects or reveals a lawyer's mental processes; and (2) 'ordinary' or 'fact' work product." *Id*. at *7 (citing *Caremark*, 195 F.R.D. at 616). "Both are generally protected and can be discovered only in limited circumstances." *Id.* (citing *Caremark*, 195 F.R.D. at 616). "Opinion work product, however, is even more scrupulously protected than ordinary or fact work product, since it 'represents the actual thoughts and impressions of the attorney.'" *Id*. (citing *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994); *Caremark*, 195 F.R.D. at 616).

## IV. DISCUSSION

### A. Kelley's Privilege Log Is Sufficient

The Plaintiffs contend that Kelley inadequately described the documents' subject matter, providing vague descriptions preventing the Plaintiffs from evaluating the claims of privilege,

and that Kelley failed to explain with specificity why each of the documents is privileged. According to the Plaintiffs, these failures warrant sanctioning Kelley by ordering the production of all the documents.

Contrary to the Plaintiffs assertions, Kelley's privilege log is sufficiently detailed. As the Court ordered, the log lists each document's date; the names of the document's author and all its recipients, together with their capacities; a description of the document's subject matter; an explanation of the purpose for the document's production; and a specific explanation of why the document is privileged. (*See* April 13, 2009, Order 7 (citing *Laun v. Laun*, No. 1:06-CV-246, 2007 WL 178607, at *3 (N.D. Ind. Jan. 19, 2007).) Having conducted an *in camera* review of the documents, it is clear that Kelley's descriptions aptly communicate their substance without revealing any protected information. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii). Moreover, Kelley's privilege log identified the protections asserted for each of the documents, and Kelley's brief elaborated on the explanation, categorizing the documents and explaining why each category should be protected. (*See* Docket # 61.)

Because Kelley has apparently complied in good faith with the Order directing it to provide a privilege log, the Court finds that ordering sanctions against Kelley would be inappropriate. *Cf. Lawson v. Sun Microsystems, Inc.*, No. 1:07-cv-0196-RLY-TAB, 2007 WL 2572170, at *4 (ordering defendant to produce a revised privilege log where his log failed to identify the request to which each document is responsive or give a specific reason why each document is privileged); *Mold -Masters Ltd. v. Husky Injection Molding Sys.*, No. 01 C 1576, 2001 U.S. LEXIS 20152 (ordering party to produce various documents because, even after amending their privilege log three times, the party failed to identify and describe some

9

documents on the privilege log).  Moreover, the Plaintiffs' concerns about the log's sufficiency

are minimized because the Court reviewed the documents in an *in camera* inspection.  *See*

*SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, No. 00 C 2855, 2001 WL

1397876, at *3 (N.D. Ill. Nov. 6, 2001) ("The parties' briefs included many arguments relating to

the sufficiency of the Defendants' privilege logs.  Because the Court chose to view the

documents *in camera*, the privilege logs' sufficiency is no longer relevant . . . .").

The Plaintiffs further contend that Kelley has failed to establish that the protections apply

on a document-by-document basis.  *See Barton*, 2008 WL 80647, at *4 (collecting cases reciting

that claims of privilege must be established on a document-by-document basis).  The Court

disagrees, for even though Kelley's brief addresses the documents in convenient categories, each

of the documents submitted for *in camera* inspection are accounted for in at least one of the

explanatory categories Kelley set forth in the brief.  Therefore, even though Kelley's brief did

not march through the documents in sequential order, they have otherwise addressed their claims

on a document-by-document basis.

### B.  Outside Counsel's Investigation Was For the Purpose of Providing Legal Advice and Conducted in Anticipation of Litigation

As a threshold matter, we address the Plaintiffs' contention that the documents pertaining

to counsel's investigation of the Plaintiffs' complaints are not privileged.  Although in certain

circumstances documents pertaining to internal investigations may be discoverable, that is not

the case here.

The attorney-client privilege may be waived where counsel's role was not limited to

investigation for ongoing litigation, but also used for other business purposes.  *See Harding v.*

*Dana Transp., Inc.*, 914 F. Supp. 1084, 1091-93 (D.N.J. 1996) (finding that counsel was acting

as an attorney for the purposes of the attorney-client privilege when he undertook an investigation to respond to plaintiffs' administrative action, but suggesting that the privilege was waived because the defendant's use of counsel's services was not limited to preparing for pending litigation, but also for other business purposes, such as formulating a sexual harassment policy).  In this instance, however, Kelley solicited legal advice from outside counsel with the purpose of responding to the Plaintiffs' EEOC charges of discrimination.[4]  Kelley "asserts that [outside counsel was] acting as a lawyer and, given that the documents were prepared only after plaintiff[s] instituted administrative proceedings against [Kelley], this assertion is credible." *Scurto v. Commonwealth Edison Co.*, No.  97 C 7508, 1999 WL 35311, at *4 (N.D. Ill. Jan. 11, 1999).  Consequently, the Court finds no such waiver here.  *See Jones v. Hamilton County Sheriff's Dep't*, No. IP 02-0808-C-H/K, 2003 WL 21383332 (S.D. Ind. June 12, 2003) (where outside counsel was hired to investigate plaintiff's EEOC charge, holding that communications between outside counsel and defendants regarding the EEOC charge were privileged).

Similarly, the work product doctrine also was not waived.  When determining whether the work product protection applies, the court must consider "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Coachmen Indus. Inc. v. Kemlite*, No. 3:06-CV-160, 2007 WL 3256654, at *2 (N.D. Ind. Nov. 2, 2007) (citing *Caremark*, 195 F.R.D. at 614); *see also Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,* 709 F.2d 1109, 1118-19

---

[4] The pleadings reflect that Jill Treat and Tiffany Johnson filed their EEOC charges on March 28, 2007, and that Cody Treat filed his on April 11, 2007.  (*See, e.g.,* Docket # 1.)  Meanwhile, the privilege log and associated documents indicate that correspondence between outside counsel and Gary Thelen, CFO of Kelley Automotive Group; Monica Senk, in-house counsel; and members of payroll administration did not commence until April 17, 2007.

(7th Cir. 1983); *Logan v. Commercial Union Ins.* Co., 96 F.3d 971, 976 (7th Cir. 1996).

Significantly, "[m]aterials or investigative reports developed in the ordinary course of business

do not rise to the status of work product." *Caremark,* 195 F.R.D. at 614. "In order to qualify as

work product, the material or report must come into existence because of the litigation or some

articulable claim has arisen that is likely to lead to litigation." *Id.* (citing *Binks,* 709 F.2d at 1120)

("Essentially, documents that are created in the ordinary course of business or that would have

been created irrespective of litigation are not under the protection of the work product doctrine."

(citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998))).

"Thus, whether a document is protected depends on the motivation behind its

preparation, rather than on the person who prepares it." *Id.* Not only must the "primary

motivating purpose behind the creation of the document or investigative report . . . be to aid in . .

. litigation in order to be deemed protected, the document must also be of a legal nature and

primarily concerned with legal assistance; technical information is otherwise discoverable." *Id.*

(quoting *Binks*, 709 F.2d at 1119; *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir.

1981) (internal citation and quotation marks omitted)).

On that score, the work-product doctrine will generally apply with respect to an internal

investigation that is undertaken in anticipation of litigation, whether it is conducted by counsel or

by other agents of the corporation. *See, e.g.*, *Peterson v. Wallace Computer Servs., Inc.*, 984 F.

Supp. 821, 824 (D. Vt. 1997) (finding that notes and memoranda from investigation undertaken

by the director of human resources and plant manager constituted work product prepared in

anticipation of litigation).

In this instance, outside counsel's investigation was clearly in anticipation of litigation,

as its purpose was to prepare Kelley's response to the EEOC charges. *See EEOC v. Koch Meat Co., Inc.*, No. 91 C 4715, 1992 WL 332310 (N.D. Ill. Nov. 5, 1992) (where counsel was retained after discrimination charges were filed with the EEOC to investigate those charges, finding that counsel was not performing a mere business function "where the possibility of litigation was remote . . . [but rather] was investigating the charges and advising his client in anticipation of future litigation"); *Scurto*, 1999 WL 35311, at *2 (citing *Pacamore Bearings, Inc. v. Minebea Co., Ltd.*, 918 F.Supp. 491, 513 (D.N.H. 1996) ("investigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine")); *EEOC v. Rose Casual Dining, L.P.*, No. 02-7485, 2004 U.S. Dist. LEXIS 1983, at *7-8 (E.D. Pa. Jan. 23, 2004) (finding that witness statements, generated after complainant's termination and after defendants received a letter from complainant threatening litigation, were created in anticipation of litigation and protected from discovery by the work product doctrine).

In sum, the record amply supports Kelley's contention that it was seeking legal advice in anticipation of litigation when it retained counsel to defend its case in the EEOC proceedings.

### C. *The In Camera Inspection Reveals That Most of the Documents Are Protected*

1. <u>Outside Counsel's Notes in Preparation of Kelley's Response to the Plaintiffs' EEOC Charges Are Protected</u>

   a. Outside Counsel's Notes Concerning Documents in the File

This first sub-category encompasses an email between inside and outside counsel containing legal advice (KEL000076); an email between outside counsel and a legal assistant noting a conversation with the EEOC investigator (KEL000086); various pages of outside counsel's personal notes (KEL000087-95, 97-115, 211, 215, 249-51, 256), many of which are

scribbled upon documents that have already been produced during discovery (*see* KEL000088-95, 97-115); and a fax cover sheet from inside counsel to outside counsel (KEL000096).

To begin, the work product doctrine shields virtually all of these items from discovery. Counsel's handwritten notes about the case, as well as the emails between counsel or between counsel and their administrative staff, reveal counsel's mental impressions and strategies in preparing the response to the Plaintiffs' EEOC charges. *See, e.g., Scurto*, 1999 WL 35311, at *3 (finding attorney's handwritten notes, including those on a copy of the Plaintiff's EEOC charge, reflected the attorney's "mental impressions and observations at the time concerning the charge, and thus plainly constitute[d] attorney work product"); *Koch Meat Co.*, 1992 WL 332310, at *4 ("The work-product doctrine protects an attorney's memoranda, notes and mental impressions generated from interviews with his clients." (citing *Hickman v. Taylor*, 329 US 495, 510 (1947)). Moreover, as discussed *supra*, these documents were generated for the purpose of responding to the Plaintiffs' EEOC charges, and therefore were created in anticipation of litigation. *See Scurto*, 1999 WL 35311, at *2; *Koch Meat Co.*, 1992 WL 332310, at *3 (finding that counsel's investigation following EEOC charge was in anticipation of future litigation). Moreover, it would be superfluous to order the production of the documents after counsel's handwritten notes are redacted, because those items have already been produced.

In short, Kelley has demonstrated that documents KEL000076, 86-115, 211, 214-15, 249-51, and 256 were prepared in anticipation of litigation by or for Kelley or by or for a Kelley representative, *see Caremark,* 195 F.R.D. at 613-14, and Plaintiffs have not established a substantial need for the materials or an inability to obtain the substantial equivalent of the information without undue hardship. *See id*. at 614. Even if Plaintiffs could have made such a

showing, counsel's mental impressions would be protected from disclosure in any event. *Id.* Accordingly, these documents are protected under the work product doctrine.

Moreover, the May, 30, 2007, email (KEL000076) contains legal advice from outside counsel to inside counsel and is therefore also subject to the attorney-client privilege. *See, e.g., McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 255 (N.D. Ill. 2000) (finding correspondence between in-house and outside counsel to be privileged, explaining, "To the extent that the communications are between outside counsel and in-house counsel, these are considered communications between attorney and client, with the in-house counsel acting as agent for the corporate client."). Furthermore, at least two pages of counsel's handwritten notes concerning the Plaintiffs' claims appear to contain confidential communications from Kelley (KEL000211, 256), *see Rehling v. City of Chicago*, 207 F.3d at 1019 (explaining that communications made by a lawyer will be protected if they either "rest on confidential information obtained from the client [or] . . . would reveal the substance of a confidential communication by the client"), and thus likewise fall under the attorney-client privilege.

Nevertheless, the July 1, 2008, fax cover sheet (KEL000096) from inside counsel to outside counsel is not protected. "Th[is] document[], while from or to attorneys, contain[s] no legal advice, and simply identif[ies] the parties to the correspondence, address, and phone and fax numbers. [It] bear[s] insufficient relation to the securing of legal advice to be accorded attorney-client privilege." *McCook Metals L.L.C.*, 192 F.R.D. at 254; *see also Rexam Beverage Can Co. v. Bolger et al.*, No. 06 C 2234, 2008 WL 4344921 (N.D. Ill. Mar. 18, 2008) (finding that a fax cover sheet, sent from plaintiff to its attorney, was not protected under either the attorney-client privilege or work product doctrine because it contained no substantive

information about a legal consultation, had no strategic value, and gave no advantage to the defendants).

          b.      Outside Counsel's Notes of Witness Interviews

This sub-category refers to documents KEL000003, 28, 7785, 119-24, 219-33, 247-48, encompassing outside counsel's notes from their interviews with Kelley employees Gary Thelen, Dan Henderson, Amber Folkner, Brent Swartz, Jason Zigler, Jeff Johnson, Erika Monroe, and Danielle Gigli, after the Plaintiffs' filed their EEOC charges, and discussions with the client following up on those interviews. The majority of the notes (excluding those from conferences with Gigli and Folkner)[5] are protected by the attorney client privilege because the conferences were conducted to provide legal advice to Kelley about the Plaintiffs' EEOC charges of discrimination. *See Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, No. 00C 1926, 2000 WL 1898515, at *10 (N.D. Ill. Dec. 20, 2000); *Scurto*, 1999 WL 35311, at *3; *Koch*, 1992 WL 332310, at *3-4.

Moreover, all of the documents in this category are protected under the work product doctrine, reflecting counsel's mental impressions about what they deemed important from their conferences with the witnesses. *McBride v. Medicalodges, Inc.*, Nos. 06-2535-JWL, 06-2536-JWL, 06-2538-JWL, 2008 WL 2157114, at *1-2 (D. Kan. May 22, 2008) (denying defendant's motion to compel the plaintiffs to produce a witness statement they took of their former employee because it was protected by the work product doctrine and the defendant did not establish that it could not obtain the substantial equivalent by other means); *EEOC v. Rose Casual Dining, L.P*, No. 02-7485, 2004 U.S. Dist. LEXIS 1983, at *7-8 (E.D. Penn. Jan. 23,

---

[5]Kelley apparently concedes that the attorney-client privilege does not apply to notes from the interviews with Folkner and Gigli but maintains that the work product doctrine applies instead. (Defs.' Br. 6.)

2004) (finding that witness statements generated after employee was fired and at the direction of counsel in preparation for litigation were protected by the work product doctrine); *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242 (N.D. Ill. 2000) (finding that attorney's notes "memorializing his confidential discussions with his client" were privileged); *Trustmark Ins. Co.*, 2000 WL 1898515, at *10 (finding counsel's handwritten notes concerning his communications with his client's employees about the case were protected under both the attorney-client privilege and the work product doctrine); *Scurto*, 1999 WL 35311, at *3 (finding work product and attorney client privilege protection for hand-written notes on meetings with employees following plaintiff's filing a charge of discrimination); *Koch*, 1992 WL 332310, at *3-4 (finding that counsel's communications with witnesses to gain information for an EEOC questionnaire were protected by the attorney-client privilege and work product doctrine). And again, the Plaintiffs have failed to demonstrate "a 'substantial need' for the documents and that [they] would suffer 'undue hardship' if . . . required to obtain the information in another manner." *Chalimoniuk v. Interstate Brands Corp.*, No. IP01-0788-C-T/K, 2002 WL 1048826, at *5 (S.D. Ind. May 21, 2002) (quoting *Caremark*, 195 F.R.D. 610, 614 (N.D. Ill. 2000)). The work product doctrine therefore shields documents KEL000003, 28, 77-85, 119-24, 219-33, 247-48 from discovery.

   c. Outside Counsel's Draft of a Statement of Dan Henderson

  Documents KEL000252-55 comprise outside counsel's handwritten notes for and draft of an affidavit for Dan Henderson (also with counsel's handwritten edits) and are dually protected under the attorney-client privilege and work product doctrine. The notes and the draft affidavit were clearly created for the purpose of litigation and contain confidential communications from

Henderson and the Kelley Defendants, as well as reveal outside counsel's mental impressions, conclusions, and strategies. *Chalimoniuk*, 2002 WL 1048826, at *2-4 (finding that rough drafts of a defendant's statement compiled at the direction of defendant's counsel were protected under both the attorney client privilege and work product doctrine); *McCook Metals L.L.C.*, 192 F.R.D. at 254-55 (finding that drafts of documents with attorney's handwritten notes were privileged); *1100 West, LLC v. Red Spot Paint & Varnish Co., Inc.*, No. 1:05-cv-1670-LJM-WTL, 2007 WL 2904073, at *2 (S.D. Ind. May 18, 2007) ("[D]ocuments created by [counsel's investigator] during the course of this litigation that reflect which potential witnesses [he] has interviewed, the questions he chose to ask them, and his notes regarding their answers are classic work product; so, too, are the affidavits that [counsel's investigator] drafted summarizing his understanding of the witnesses' statements. It is frankly perplexing that the Defendant would suggest otherwise."). Documents KEL000252-55 are consequently protected from discovery.

2.    Outside Counsel's Notes Taken During the EEOC Witness Interviews Are Work Product

Kelley correctly asserts work product protection for documents KEL000234-46, which comprise outside counsel's notes of the EEOC witness interviews. *Scurto*, 1999 WL 35311, at *2 (holding that notes prepared by counsel during a Department of Labor hearing in connection with the Plaintiff's complaint constitute work product material). These notes are replete with outside counsel's mental impressions of the interviews, and since the Plaintiffs have apparently already received a copy of the EEOC investigator's notes from the interviews, they have no substantial need for these materials.

3.    Outside Counsel's Drafts of its Position Statement and Legal Memoranda, As Well As Their Communications About the Position Statements, Are Privileged and Constitute Work Product

Documents 000029-75 and 291-307 comprise outside counsel's drafts of position statements to the EEOC and emails between outside counsel and Gary Thelen, CFO of Kelly Automotive Group, discussing and forwarding the drafts.  Plaintiffs' concede, and with good reason, that these drafts and communications pertaining to the drafts are privileged.  (*See* Resp. Br. 5.)  "Defendants' drafts of the position statement contain counsel's mental impressions, legal advice, and evaluation of the case."  *Jones*, 2003 WL 21383332, at *5 (finding that the drafts of position statements and communications between counsel and client about the plaintiff's charge were subject to the attorney-client privilege); *see also Thompson*, 2007 WL 4125770, at *4 (finding that a draft termination letter was protected by work product doctrine because it revealed counsel's mental impressions and conclusions and was drafted in anticipation of trial); *Long*, 204 F.R.D. at 135 (finding that the attorney-client privilege protected the disclosure of defendant's draft response to the plaintiff's complaint).

"In addition, the correspondence between counsel and Defendants was drafted with the expectation that the information contained therein would not be disclosed."  *Id.* (collecting cases indicating that communications, such as letters, between the attorney and the client are privileged where they would reveal the client's confidences); *see also McCook Metals L.L.C.*, 192 F.R.D. at 255 (finding that letters between in-house attorneys and outside counsel concerning the patents at issue were privileged).  The privilege, therefore, extends to the emails (KEL000004, 212-13, 257-76, 278-90) reflecting that Kelley solicited outside counsel for legal advice about responding to the Plaintiffs' EEOC charges and provided outside counsel with

information needed to advise Kelley about the position statement.  *Jones*, 2003 WL 21383332, at *5 (finding that communications between counsel and defendants regarding the plaintiff's EEOC charge of discrimination were protected by the attorney client privilege).[6]

However, documents KEL000216-18, which Kelley contends are emails from outside counsel to Kelley for the purpose of preparing an EEOC charge response, are not protected.  For the most part, these emails contain no confidential communications but rather simply discuss the logistics of the EEOC investigator's witness interviews.  Concerning the April 8, 2008, email from Melanie Farr (outside counsel) to Monica Senk (in-house counsel) setting forth the EEOC investigator's interviewing schedule (KEL000216), the third complete sentence (indicating an aspect of outside counsel's plan) may be redacted before production because it reveals counsel's strategy.  Kelley has not shown, however, that the privilege attaches to the entire document.

Accordingly, Kelley may withhold documents KEL000004, 29-75, 212-13, 257-76, 280-307.  Documents KEL000216-18, however, must be produced, subject to the redaction discussed above.

4.   Some of the Faxes and E-mails Providing Information and Documents for Kelley's Defense of the EEOC Charge Are Protected

The remaining documents, KEL000001-2, 4-26, 125-210, and 277-79 are transmittals of information between Kelley and outside counsel by email and fax, attaching documents that

---

[6] Plaintiffs contend that under *Jones*, 2003 WL 21383332, only drafts of the EEOC position statement and communications directly related with the position statement are protected by the attorney-client privilege.  The Plaintiffs, however, too narrowly construe *Jones*'s meaning.  Rather than confining the category of protected documents to communications directly related with the position statement, the court in *Jones* found that communications between counsel and defendants "*regarding the charge filed by* [the plaintiff]" fell under the attorney-client privilege.  *Id*. at *5.  Although the court did not protect other unspecified categories of documents, it provided no description or analysis of those documents and instead noted the defendants' response allowing the plaintiff to review those categories of unprotected documents.  Consequently, Plaintiffs' reliance on *Jones* is not persuasive.

Kelley indicates it already produced in discovery, such as copies of documents from the EEOC and documents from Henderson's personnel file. For the reasons explained in the previous section, where the fax cover sheets and emails contained substantive communications for the purpose of enabling outside counsel to provide legal assistance, they are privileged and need not be disclosed. (KEL000125-26, 127, 204-10, 277-79.)

However, documents KEL000001, 5, 9, 24, and 190 are simply fax cover sheets between outside counsel and Kelley that relate no confidential communications and are devoid of legal advice or requests for legal advice, and consequently, as discussed *supra* in Section 1(a), *see McCook Metals L.L.C.*, 192 F.R.D. at 254; *Rexam Beverage Can Co.*, 2008 WL 4344921, *2, they will not be protected. Neither will document KEL000015 be shielded from discovery, as it amounts to a chain of three emails between Kelley's human resources department and outside counsel forwarding non-privileged, already-produced information (a scan of the written notes from Henderson's personnel file).

As Kelley concedes (Defs.' Br. 10), the documents attached to most of the faxes and emails (KEL000002, 6-8, 10-14, 16-23, 25-27, 191-203, 205-10) do not appear to be either confidential attorney-client communications or work product, as they consist of documents from personnel files and materials from the EEOC. However, because Kelley asserts that it has already produced these materials during discovery, the Court will not order Kelley to produce duplicative material.

Accordingly, Kelley must produce documents KEL000001, 5, 9, 15, 24, and 190, but may withhold the remaining documents addressed in this category.

### C. Kelley's Affirmative Defense Does Not Result in Waiver

The Plaintiffs also contend that Kelley intends to use the investigation as an affirmative defense, placing the investigation at issue and causing Kelley to waive any protections. Kelley's affirmative defense No. 12 alleges that Kelley "exercised reasonable care to prevent and correct promptly any discriminatory behavior, and plaintiffs unreasonably failed to take advantage of any preventative or corrective opportunities provided by [Kelley] or to avoid harm otherwise." (Answer to Am. Compl. 17.)

Indeed, a defendant may also waive the attorney-client privilege if it asserts its investigation as part of its defense. *Harding*, 914 F. Supp. at 1093. Where counsel's investigation itself provides a defense to liability, "the defendants have fused the roles of internal investigator and legal advisor. Consequently, [the defendants] cannot now argue that its own process is shielded from discovery." *Id*. When this occurs, fundamental fairness requires that "the plaintiffs . . . be permitted to probe the substance of [the defendant's] alleged investigation to determine its sufficiency." *Id*. "Without having evidence of the actual content of the investigation, neither the plaintiffs nor the fact-finder at trial can discern its adequacy." *Id*.; *see also Chivers v. Cent. Noble Cmty. Schs.*, 1:04-CV-00394, 2005 U.S. Dist. LEXIS 16057 (N.D. Ind. Aug. 4, 2005) (finding that the school's former superintendent waived the attorney-client privilege by placing the attorney's advice at issue).

"[T]o waive the attorney-client privilege, 'a defendant must do more than merely deny a plaintiff's allegations. The holder [of the privilege] must inject a new factual or legal issue into the case.'" *Claffey v. River Oaks Hyundai*, 486 F. Supp. 2d 776, 778 (N.D. Ill. 2007) (quoting *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987)). "[A]s a general rule, an

implied waiver of this type happens only if a party uses privileged communications to defend itself or attack its opponent." *Id*. (citations omitted); *see generally Rose Casual Dining*, 2004 U.S. Dist. LEXIS 1983; *Trustmark Ins. Co*. 2000 WL 1898518, at *7 ("[A] party must affirmatively try to use the privileged communication to defend itself or attack its opponent in the lawsuit before the 'at issue' waiver may apply.").

At first blush, it seems that Kelley's affirmative defense No. 12 would indicate that Kelley is in fact putting counsel's investigation of the EEOC charges at issue in this case, which could result in waiver. However, it has been fleshed out during the discovery process that Kelley's defense is not that it acted reasonably upon learning of the Plaintiffs' complaints, but rather that the Plaintiffs did not take advantage of Kelley's policies in reporting harassment and discrimination. In other words, because the Plaintiffs allegedly did not report their complaints during their employment, there is no internal investigation of any complaints to rely upon; the only investigation (conducted by outside counsel) was for the purpose of preparing for litigation, once the EEOC charges were filed. (*See* Docket # 44, Ex. 8 at 3 ("The first time that Plaintiffs brought their allegations of sexual harassment to [Kelley] was in their administrative agency charges. As such, no investigation was commenced prior to such charges being filed. . . . Prior to the Plaintiffs' charges, there simply are no documents related to any investigation of any allegations of sexual harassment by plaintiffs . . . .").) Thus, because Kelley is not actually relying on the adequacy of any investigation to support an affirmative defense, Kelley has not placed outside counsel's investigation at issue. (*See* Docket # 44, Ex. 8 at 3 "[Kelley's defense No. 12] applies to [Kelley's] policies and Plaintiffs' awareness of such policies, including specifically [Kelley's] sexual harassment reporting policy, along with Plaintiffs' failure to

comply with such policies."); Docket # 44 Ex. 10 at 1 ("Our January 30, 2009 letter established the basis for the Kelley Defendants' affirmative defense, paragraph 12, as relating to [Kelley's] policies and Plaintiffs' awareness of such policies, . . . along with Plaintiffs' failure to comply with such policies, and not any investigation undertaken by outside counsel to respond to an administrative charge. Ms. Farr's investigation was undertaken for the purpose of responding to Plaintiffs' administrative charges against [Kelley], and is not the subject of any defense raised by the Kelley Defendants.").) Consequently, "at issue" waiver does not apply in this context.

## V. CONCLUSION

For the reasons set forth herein, Kelley's Motion for Protective Order (Docket # 60) is DENIED IN PART in that Kelley is to produce to Plaintiffs on or before June 15, 2009, the following documents, which are ultimately neither protected by the attorney-client privilege nor the work-product doctrine: KEL000001, 5, 9, 15, 24, 96, 190, and 216-18. Kelley's motion (Docket # 60) is GRANTED IN ALL OTHER RESPECTS.

SO ORDERED.

Enter for June 2, 2009.

S/Roger B. Cosbey_____
Roger B. Cosbey,
United States Magistrate Judge