UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE INDIANA

| | | |
|---|---|---|
| JILL L. TREAT, CODY W. TREAT and TIFFANY L. JOHNSON, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.   1:08-cv-0173-WCL-RBC |
| vs. | ) ) ) | |
| TOM KELLEY BUICK PONTIAC GMC, INC., d/b/a KELLEY SUPERSTORE, KELLEYAUTOMOTIVE GROUP, INC., and DANIEL HENDERSON, | ) ) ) ) ) | |
| Defendants. | ) | |

**KELLEY DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO STRIKE
EVIDENTIARY SUBMISSIONS OF PLAINTIFF JILL TREAT SUBMITTED IN
OPPOSITION TO KELLEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Tom Kelley Buick Pontiac GMC, Inc. ("TKBPG") and Kelley Automotive

Group, Inc. (together, "Kelley Defendants"), submit their Brief in Support of their Motion to

Strike Evidentiary Submissions of Plaintiff Jill Treat ("Treat") Submitted in Opposition to Kelley

Defendants' Motion for Summary Judgment.

**I.      INTRODUCTION**

Kelley Defendants set forth herein evidentiary issues with Treat's summary judgment

opposition, including defects in evidence submitted via affidavit.  Federal Rule 56(e) provides:

> A supporting or opposing affidavit must be made on personal knowledge, set out
> facts that would be admissible in evidence, and show that the affiant is competent
> to testify on the matters stated.  If a paper or part of a paper is referred to in an
> affidavit, a sworn or certified copy must be attached to or served with the
> affidavit. . . .

Fed. R. Civ. P. 56(e) (2009 ed.)  Because the affidavit evidence identified herein does not meet

the requirements of the Federal Rules, it must be stricken.

II.    **ARGUMENT**[1]

A.    **Cited Portions of Treat's Errata Sheet Must Be Stricken.**

Substantive change to deposition testimony via an errata sheet is "impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'"  *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).  This principle is supported by the well-established rule that deposition testimony may not be substantively altered by a later affidavit.  *Id.*  The Tenth Circuit stated:  "A deposition is not a take home examination."  *Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003).

Below, Kelley Defendants identify specific assertions by Treat in her errata sheets that attempt to alter her testimony.  The sheets offer no evidence that the court reporter misstated what she said.  Because the errata sheet revisions do more than "correct [] an error in transcription," the changes to Treat's testimony are improper and must be disregarded.  *Thorn*, 207 F.3d at 389; *see also Moore v. Dixon*, 2007 WL 4376211, *3 (E.D. Wis. Dec. 12, 2007); *Greenway v. Int't Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) (when party attempts to change evidentiary record through contradictory errata sheets, appropriate remedy is to order errata changes "deleted," and to treat the transcript "as if the plaintiff refused to sign the deposition or has waived the signing of the deposition").

In her Genuine Issue of Facts (Docket No. 107-2), Treat cites her errata sheet to support her opposition to summary judgment:

(D)(26)  Citing her Errata Sheet, p. 15, Treat alleges that she contacted Gary Patterson after her termination and "spoke to him in detail regarding Henderson's conduct."   Treat attempts to add

---

[1] The documents cited herein are attached as Exhibit 1.

information by errata which she wholly failed to relate during her deposition.  At the close of her

deposition, Treat testified:

> Q.  Have we talked about all . . . every fact that supports your claims?
>
> A.  As far as I know.

(Treat Dep., p. 334)  Treat cannot add the testimony she seeks and it must be stricken.

(M)(68)  Citing her Errata Sheet relating to page 300 of her deposition transcript, Treat alleges:

"The cause of the extended length in time for the CIT was in a large part due to Henderson

presenting false information on loan applications to banks."   The concern with such an addition

is magnified by the inapplicability of the other record citation to this "Genuine Issue," namely

page 149 of her deposition, which does not support this assertion either.

**B.**    **Treat's Incorrect Citations to Record in her Genuine Issue of Material Facts Must Be Stricken.**

In her Genuine Issue of Material Facts (Docket No. 107-2), Treat cites various portions of

deposition or affidavit testimony that do not support her alleged genuine issue of fact, and such

must be stricken:

**(A)(1)** Treat cites Cody Treat's deposition transcript, page 227, to support her assertion

that Mr. Treat was not subject to comments described by his mother and sister; however, the

testimony cited does not even relate to the same subject matter.  *See also* reference on page 2 of

Treat's Brief (Docket No. 107), which must be similarly stricken.

**(C)(24)** Treat asserts that "Henderson docked Treat's pay by not paying her pursuant to

her pay plan for the month of September, 2006, then Henderson fired Treat."  However, the cited

testimony supports that Henderson terminated her, but not that Henderson docked Treat's pay.

Henderson did not testify that he did not pay Treat according to her pay plan.  (Henderson Dep.,

p. 133)  Indeed, the undisputed evidence is that Billie McKinney was the "go-to" person for

payroll (Jill Treat Dep., p. 111), and that it was McKinney's job to calculate payroll (as well as Accounting Department to calculate the Department's actual sales), not Henderson's final decision. (Naylor Dep., pp. 2-3, 42-46; Henderson Dep., p. 134) Therefore, Treat's "Genuine Issue" is not supported by evidence.

**(I)(54)(b)** Treat asserts that on October 11, 2006, she told Henderson that she "wanted to discuss other problem [sic] in the department such as his comments and how he had not previously complied with her requests." However, the cited page of her deposition transcript (215) does not support this assertion. Indeed, the undisputed evidence presented by Kelley Defendants about the content of Treat's conversation with Henderson establishes that such a statement was not made to Henderson during such conversation. (Jill Treat Dep., pp. 92-93, 242-43, 314-15)

        **C.**      **References to Jill Treat's Alleged Post-Termination Conversation with Gary Patterson Must Be Stricken.**

On page 7 of her Brief (Docket No. 107), Treat states: "Immediately after Treat was fired, she contacted Gary Patterson and spoke to him in detail regarding Henderson's conduct." However, Treat neither describes what was said to Patterson, nor does she provide any testimony by Patterson about such conversation. Without any description of what was said to Patterson, such a statement is inadmissible hearsay. As state above, such a statement is an out-of-court statement offered for the truth of the matter asserted and thus inadmissible hearsay. Fed. R. Evid. 801 and 802. Treat cannot be attempting to demonstrate simply that something was "said" to or by Patterson, because she cannot even identify what that "something" is. Such references must be stricken.

**D.**      **"Title Table" to Jill Treat Affidavit Must Be Stricken.**

In her Affidavit, Jill Treat swears and affirms that the information in her Affidavit is "based on my personal knowledge." (Jill Treat Aff., ¶ 1)  In paragraph 18 of her Affidavit, Jill Treat attempts to lessen the impact of the contracts-in-transit ("CIT") during her employment by stating:  "If a higher volume of Special Finance Department deals were being processed than were being reported on a monthly basis, it would make the dollar volume of the contract in transit appear artificially high.  In reviewing the contracts in transit, and comparing them on a percentage basis, the dollar amount of contracts in transit did not go down significantly after I was terminated." (Jill Treat Aff., ¶ 18)  Treat created a summary of such percentages, and attached it to her Affidavit.  (Docket No. 108-2, p. 8)  Treat's statement regarding the "percentage" of CIT is argument, not evidence, and is not based upon her personal knowledge. Her job at TKBPG did not require her to compare months of CIT in comparison to sales of that month.  (Jill Treat Dep., p. 114, Ex. 6)  Indeed, Thelen testified that CIT represents "money owed to us." (Thelen Dep., p. 36)  In addition, Henderson testified:  "Every contract has a value to it, and the more contracts that are in transit, the more – the more unfunded contracts in transit, the more unfunded assets the Kelley organization has on the street that it has to go and replace." (Henderson Dep., p. 83)  Therefore, the only admissible evidence (not argument) indicates that the actual number of dollars in transit is, indeed, of concern to TKBPG.  Treat is not competent to testify to this information and paragraph 18 of Jill Treat's Affidavit, as well as the attached "Title Table" must be stricken.

**E.**      **Jill Treat's "Calculation" for July, August and September 2006 Pay attached to Jill Treat Affidavit Must Be Stricken.**

In her Affidavit, Jill Treat swears and affirms that the information in her Affidavit is "based on my personal knowledge."  (Jill Treat Aff., ¶ 1)  In paragraphs 15-16 of Treat's

Affidavit, she refers to her review of deal recaps received in discovery and that she "learned" that "many of the Special Finance Department deals had not been included in calculating my wages." (Jill Treat Aff., ¶ 15)  Treat proceeded to create her own calculations of her pay, and attached them to her Affidavit. (Docket No. 108-2, pp. 18-20)  However, Treat's job description did not include calculating the amount of commissions to be paid, nor did it include determining the universe of sales from which commissions could be paid in a given month. (Treat Dep., p. 114, Ex. 6)  Rather, the Accounting Department received the deal recaps and performed whatever corrections needed to be made to determine sales and commissions. (Naylor Dep., pp. 2-3)  The deal recaps themselves were "useless" to identify profit from sales. (Thelen Dep., pp. 52-53)  Gary Thelen, unlike Treat, was TKBPG's Chief Financial Officer ("CFO") and responsible for the Accounting Department. (Thelen Dep., pp. 3, 56)  As such, Thelen, unlike Treat, can provide competent, admissible evidence of commission calculation.  The fact that Treat reviewed the deal recap documents that were dated on a certain date does not provide admissible evidence that such sales were completed, correct, or even ripe for commission payment.  Therefore, Treat is not competent to provide the testimony offered and Treat's calculations cannot be considered admissible evidence at summary judgment.

**F.      Johnson's Affidavit Must Be Stricken.**

Johnson's Affidavit, submitted as Exhibit 4 to Treat's Designation of Evidence (Docket No. 108) must be stricken because it is neither sworn nor does it subject Johnson to the penalties of perjury. *DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 471 (7th Cir. 1990). *See also* 28 U.S.C. § 1746.  "[U]nsworn statements submitted in opposition to summary judgment are commonly stricken or ignored." *Koch v. Convenience Industry Associates, LLC*, Case No. 1:05-cv-1753-LJM-WTL, 2007 WL 2479588 at *1 (S.D. Ind. Aug. 29, 2007) (striking unsworn

statements attached to an affidavit) (citing *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1255 n.13 (7th Cir. 1990)).  Johnson's bare signature appended to the end of a document entitled "Affidavit of Tiffany L. Johnson" does not comport with Seventh Circuit requirements for affidavits, and such must be stricken in its entirety, including every reference to such Affidavit in Treat's Brief, Designation and Genuine Issue of Facts.

### III.   CONCLUSION

Kelley Defendants seek exclusion of the above-referenced items from the summary judgment record, due to Treat's failure to comport with Federal Rule of Civil Procedure 56. Kelley Defendants respectfully request that the Court STRIKE the above-referenced portions of Treat's opposition materials, and all other proper relief.

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

s/ Bonnie L. Martin
Brandon M. Shelton, #21086-49
Bonnie L. Martin, #20248-18
111 Monument Circle, Suite 4600
Indianapolis, IN 46204
(317) 916-1300
Fax: (317) 916-9076
Email: brandon.shelton@ogletreedeakins.com
        bonnie.martin@ogletreedeakins.com

Attorneys for Kelley Defendants, Tom Kelley Buick Pontiac GMC, Inc., d/b/a Kelley Superstore, and Kelley Automotive Group, Inc.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been filed electronically, this 4th day of February, 2010. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Jack R. Rochyby, Esq.
Sara Rochyby, Esq.
ROCHYBY, SPIELMAN & FLORA, LLP
jrochyby@choiceonemail.com

Robert D. Moreland, Esq.
BAKER & DANIELS LLP
robert.moreland@bakerd.com

s/ Bonnie L. Martin

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN 46204
Telephone: (317) 916-1300
Facsimile: (317) 916-9076

8175404.1 (OGLETREE)