UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JILL L. TREAT, CODY W. TREAT, and<br>TIFFANY L. JOHNSON, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CIVIL NO.: 1:08-CV-0173-WCL-RBC<br>) |
| TOM KELLEY BUICK PONTIAC GMC,<br>INC., d/b/a KELLEY SUPERSTORE,<br>KELLEY AUTOMOTIVE GROUP, INC.,<br>and DANIEL HENDERSON | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on motion by defendants Tom Kelley Buick Pontiac GMC, Inc., d/b/a Kelley Superstore, Kelley Automotive Group, Inc., and Daniel Henderson ("Defendants"), for bill of costs pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, and the verified declaration of their counsel Bonnie L. Martin.[1] The Clerk of the Court issued notice on May 12, 2010 that costs would be taxed in this matter in the amount of $15,570.56. Plaintiffs Tiffany Johnson ("Tiffany"), Cody Treat ("Cody"), and their mother Jill Treat ("Mrs. Treat") (collectively, "Plaintiffs") filed their objection to certain costs on May 24, 2010, and Plaintiffs filed their response on May 25, 2010.

For the following reasons, Defendants may recover no more than $3990.92 in costs from Mrs. Treat, no more than $3225.28 from Cody, and no more than $500 from Tiffany, for a total of $7716.20 from all plaintiffs.

---

[1] Aff. of Bonnie L. Martin (Doc. No. 153-1).

1

FACTUAL BACKGROUND

The facts relevant to this motion are as follows. Each of the plaintiffs was employed in the Special Finance Department of Tom Kelley Buick Pontiac GMC, a car dealership. On October 12, 2006, Daniel Henderson, the manager of that department, terminated Mrs. Treat and Cody's employment, and Tiffany resigned that same day. On June 30, 2008, Plaintiffs filed in Indiana state court a complaint against Defendants alleging numerous claims including age and sex discrimination, sexual harassment, Equal Pay Act violations, intentional and negligent infliction of emotional distress, retaliatory discharge, and Indiana Wage Act claims.[2] Defendants removed the case to this court on July 21, 2008.[3] On March 18 and 19 and April 28, 29, and 30, 2009, Defendants took video-recorded depositions of Plaintiffs and had them stenographically transcribed, incurring costs of $12,902.09.[4] Then, on April 30, 2010, this court granted summary judgment in favor of Defendants on all claims.[5] Defendants used portions of the stenographic transcripts of Plaintiffs' depositions to support their motion, but none of the video recordings were used. Defendants submitted a Bill of Costs on May 11, 2010 seeking to recover $15,570.56 in total costs,[6] and the following day the clerk of this court issued notice that costs would be taxed in that amount against Plaintiffs.[7] On May 24, 2010, Plaintiffs objected to Defendants' Bill of Costs.[8]

---

[2] Compl. (Doc. No. 1).
[3] Notice of Removal (Doc. No. 2).
[4] Evidence in Supp. of Bill of Costs (Doc. No. 153-2). The costs of video recording are not distinguished from the costs of transcription. However, the deposition costs for each plaintiff are delineated as follows: Mrs. Treat (two days): $5383.83; Cody (two days): $4347.13; Tiffany: $3171.13.
[5] Doc. Nos. 148-52.
[6] Defs.' Br. in Supp. of Bill of Costs (Doc. No. 153).
[7] Notice of Costs to be Taxed (Doc. No. 154).
[8] Pls.' Objection to Defs.' Bill of Costs for Taxation of Costs Against Pls. (Doc. No. 155).

STANDARDS FOR TAXING AND REVIEWING COSTS

Unless a court order provides otherwise, "costs – other than attorneys' fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). When a district court grants a party's motion for summary judgment, that litigant is a "prevailing party" for purposes of Rule 54(d). *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 944-945 (7th Cir. 1997) (citing *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237 (7th Cir. 1985), *overruled on other grounds*, *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258 (7th Cir.1989)). There is a "strong presumption" that the prevailing party will recover costs. *Id.* at 945 (citing *Finchum v. Ford Motor Co.*, 57 F.3d 526, 533 (7th Cir. 1995)). The losing party has the burden to affirmatively show that the prevailing party is not entitled to costs. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991). Generally, only misconduct by the prevailing party worthy of a penalty or the losing party's inability to pay will justify denying costs. *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988).

A district court may not tax a prevailing party's costs to the losing party under Rule 54(d) unless the specific expenses sought to be taxed are authorized by a federal statute. *Little v. Mitsubishi Motors North America, Inc.*, 514 F.3d 699, 701 (7th Cir. 2008) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987)). "Costs" include, among other things, fees for "printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Costs for video-recorded depositions can be recovered under § 1920(2). *Little*, 514 F.3d at 701.

In addition to being authorized by statute, any cost the prevailing party seeks to recover must be both reasonable and necessary to the litigation. *Id.* at 702. The district court has broad

3

discretion in determining whether a cost was reasonably necessary to the conduct of the litigation and whether the amount of the cost is reasonable. *Illinois v. Sangamo Const. Co.*, 657 F.3d 855, 864 (7th Cir. 1981). The fact that a court disposes of a case at the summary judgment stage is no impediment to an award of costs, provided that they were otherwise reasonably necessary for use in the case. *Hudson,* 758 F.2d at 1243.

The clerk may tax costs on fourteen days' notice. Fed. R. Civ. P. 54(d)(1). On motion served within the next seven days, the court may review the clerk's action. *Id.*

## DISCUSSION

Plaintiffs assert three arguments against the costs Defendants seek to recover from them. First, they contend that Defendants' decision to video-record Plaintiffs' depositions in addition to stenographically transcribing them resulted in "an unreasonable and unnecessary, fully discretional expense which Defendants incurred."[9] Plaintiffs do not object to the necessity of the depositions under § 1920(2); rather, they object to the necessity of *video-recorded* depositions.[10] Second, Plaintiffs argue that if costs are taxed against them, they should be taxed proportionally among each plaintiff.[11] Finally, Plaintiffs claim that they should not be required to pay any of the costs Defendants seek because Plaintiffs are financially unable to do so.[12] The court addresses each argument in turn.

---

[9] Pls.' Objection to Defs.' Bill of Costs for Taxation of Costs Against Pls. 1-2 (Doc. No. 155).

[10] Pls.' Objection to Defs.' Bill of Costs for Taxation of Costs Against Pls. 2 (Doc. No. 155). Moreover, Plaintiffs do not object to any of the other costs assessed against them, and accordingly the court affirms the clerk's taxing those costs against Plaintiffs.

[11] Pls.' Objection to Defs.' Bill of Costs for Taxation of Costs Against Pls. 2 (Doc. No. 155).

[12] Pls.' Objection to Defs.' Bill of Costs for Taxation of Costs Against Pls. 2-3 (Doc. No. 155).

### A. Necessity of Plaintiffs' Video-Recorded Depositions

While Plaintiffs concede that the stenographic transcripts of their depositions were necessarily obtained for use in the case under § 1920(2), Plaintiffs contend that the video-recorded transcripts were not. Plaintiffs argue against the necessity of the video-recorded transcripts by pointing out that Defendants did not utilize video footage to support their Motion for Summary Judgment, and would not likely have introduced any video footage at trial.[13] Defendants, however, correctly cite *Roberts v. Owens-Corning Fiberglass Corp.* for support of the proposition that Defendants need not have introduced such footage as evidence in order to meet § 1920(2)'s necessity requirement for deposition transcripts.[14] *Roberts v. Owens-Corning Fiberglass Corp.*, 101 F. Supp. 2d 1076, 1087 (S.D. Ind. 1999); *see also Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir. 1985) (holding that a deposition transcript need not be used at trial for it to be considered necessarily obtained for use in the case).

But notwithstanding the fact that Defendants need not have actually used the video footage in support of their summary judgment motion, there is little basis in this case to believe that such footage would have become "necessary" at any point in the litigation, especially given the high cost of that footage. For their part, Defendants provide only one reason in support of their contention that the video-recorded transcripts were necessarily obtained for use in the case: that video-recording Plaintiffs' testimony may have captured information related to Plaintiffs' intentional and negligent infliction of emotional distress claims in a manner that stenographic transcripts alone could not have.[15] *See Gernaat v. Four Star Taxi, Inc.*, 2009 WL 2747952 *2

---

[13] Pls.' Objection to Defs.' Bill of Costs for Taxation of Costs Against Pls. 2 (Doc. No. 155).

[14] Defs.' Reply in Supp. of Bill of Costs 1-2 (Doc. No. 156).

[15] Defs.' Reply in Supp. of Bill of Costs 2 (Doc. No. 156). Although these claims were eventually dismissed, they had not been dismissed at the time of Plaintiffs' depositions.

(N.D. Ind. 2009) (allowing recovery of costs for video-recorded and printed depositions of experts because the video allowed the prevailing party to "effectively present the evidence to the jury" at trial, and the printed transcripts enabled counsel to "accurately quote key testimony in closing argument").

Defendants' argument has some merit but is not convincing. They are correct that the use of a video recording to capture a deponent's visual responses could, in the appropriate circumstances, be considered necessary under § 1920(2).[16] The court does not believe, however, that such circumstances exist here. In the case at bar, Plaintiffs' depositions were not taken until over twenty-nine months had elapsed since Plaintiffs had ceased working for Defendants. That translates to almost two-and-a-half years that Plaintiffs had been removed from the alleged infliction of emotional distress. Had the Plaintiffs' depositions been taken soon after the alleged infliction of emotional distress had occurred, the videos would have been likely to convey valuable information about the Plaintiffs' respective emotional states at a particularly relevant point in time in ways that the stenographic transcripts simply could not have, and on that basis would justify the extra costs associated with video-recording the depositions. However, in light of the great length of time separating the alleged infliction of emotional distress and the depositions of Plaintiffs, the court cannot agree with Defendants that the video-recorded transcripts were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). The remote possibility that video-recording Plaintiffs' depositions would shed light on Plaintiffs' stale emotional distress claims in such a way as to render a stenographic transcript inadequate does not justify the excessive costs associated with video-recording the depositions.

---

[16] When a deponent's personal feelings or emotional state at the time of a deposition are particularly important, a video-recorded deposition may be especially appropriate.

Defendants do not assert any further reasons that would convince the court that video-recording the depositions was necessary. Instead, Defendants contend generally that there is a natural incentive against unnecessary spending because Defendants could have had "no confidence that they were gong to win the case and thus be able to submit a bill of costs." *Anderson v. Griffin*, 397 F.3d 515, 522 (7th Cir. 2005). That incentive, they argue, is a "better check on extravagance than would be a court's effort to decide after the fact whether a particular expenditure was sensible given its anticipated contribution to a favorable outcome of the litigation." *Id.* In short, they believe that the court should not conduct a "painstaking review" of the propriety of the deposition costs in this case. *See Reese v. Karl Schmidt Unisia, Inc.,* 2008 WL 3465932, *2 (N.D. Ind. Aug. 12, 2008) (holding that the uncertainty of a party's success creates a market constraint which prohibits parties from running up deposition costs).

Defendants are certainly correct that when it comes to the costs a party incurs in litigating a case, there exists a natural incentive against unnecessary spending that often renders needless a meticulous review. However, the strength of that incentive necessarily depends upon the party's financial means. When a party has limited financial means, the incentive to save money is strong, and the party's own discretion is often a good indicator of the necessity of its expenditures. However, when a party has extensive financial resources – as is often the case when companies are parties to a suit – those resources may allow that party's counsel to make decisions based on convenience or preference rather than on necessity. *See Hudson*, 758 F.2d at 1243 (stating that courts may not tax the costs of deposition transcripts provided merely for the convenience of the requesting attorney). Thus, a financially-secure party's discretion in its expenditures may not be a reliable indicator of what was reasonably necessary because the party's incentive not to spend is weakened. Here, Defendants comprise a sizeable car dealership

7

with significant monetary resources. Such a financial "cushion" affords Defendants' counsel the ability to make decisions based on convenience or preference rather than necessity. And while the court need not conduct a "painstaking review" of the costs Defendants incurred, the court must still ensure that such costs were not incurred to satisfy counsel's preference or convenience. Having already concluded that Defendants' reason for video-recording the depositions at issue in this case was not compelling, the court refuses to rely on Defendants' discretion as a plumb line for necessity. The video-recorded depositions appear to the court to have been obtained for the discretionary convenience or predilection of counsel; thus, the costs associated with them are not taxable.[17]

In short, the court finds that the video-recorded transcripts were not necessarily obtained for use in the case as required by § 1920(2). On this basis,[18] the cost of video-recording Plaintiffs' depositions should be excluded from those taxed against Plaintiffs. Unfortunately, Defendants have not submitted records distinguishing the video fees from the stenographic transcription fees. In this regard, Plaintiffs urge the court to tax $2539.85, the same price they paid to obtain stenographic copies of their transcripts.[19] However, this figure is not adequate because it reflects only copying fees (generally calculated on a per-page basis) and does not account for the various fees that would have been charged by the recorder had the deposition actually been recorded stenographically. For that reason, the court will tax what it deems to be a

---

[17] This is not to say that Defendants were not entitled to video-record Plaintiffs' depositions for their own convenience. However, § 1920(2) allows a prevailing party to recover costs for deposition transcripts only when they are "necessarily obtained for use in the case." Costs incurred for convenience or preference are not necessarily obtained for use in the case. *Hudson*, 758 F.2d at 1243.

[18] The court does not address the reasonableness of the cost of video-recording the depositions because doing so is not necessary to rule on this motion.

[19] Ex. 1 to Pls.' Objection to Defs.' Bill of Costs for Taxation of Costs Against Pls. (Doc. No. 155).

reasonable cost. The total price of the video-recorded depositions was $12,902.09. The court believes that reducing that price by $6000 ($1200 for each day a plaintiff was deposed) will account for a reasonable cost for stenographically transcribing the lengthy depositions while excluding unnecessary costs for video-recording them. Thus, Plaintiffs should be taxed $6902.09 total for their three depositions (in addition to the other undisputed costs taxed against them).[20]

### *B. Pro-Rata Apportionment of Costs*

Plaintiffs' second argument is that any costs taxed against them should be divided proportionally because the deposition costs "varied greatly per Plaintiff."[21] Defendants counter by pointing out that Plaintiffs are family members who asserted interrelated claims against the same defendants. Given the relationship between the parties, Defendants argue, it cannot be said that one of the plaintiffs was responsible for a disproportionate share of the costs.

In the Seventh Circuit, the presumptive rule is joint and several liability "unless it is clear that one or more of the losing parties is responsible for a disproportionate share of the costs." *Anderson*, 397 F.3d at 522-23. Here, the cost of each plaintiff's deposition is easily ascertainable, and a comparison of those costs reveals that they are disproportionately distributed amongst the plaintiffs. Out of the $12,902.09 initially taxed against Plaintiffs for their depositions, Mrs. Treat's deposition cost $5383.83, accounting for 41.7% of the three plaintiffs' deposition costs. Cody's deposition, on the other hand, cost $4,347.13, or 33.7% of the total

---

[20] $12,902.09 - $6000 = $6902.09. While this is still a substantial cost for depositions, Plaintiffs brought a multi-party, multi-claim lawsuit and thus "cannot be surprised that Defendants were required to incur substantial costs to defend themselves." Defs.' Reply in Supp. of Bill of Costs 3 (Doc. No. 156).

[21] Pls.' Objection to Defs.' Bill of Costs for Taxation of Costs Against Pls. 2 (Doc. No. 155).

deposition costs, and Tiffany's deposition cost $3,171.13, or 24.6%. These numbers clearly show that the responsibility for the costs associated with Plaintiffs' depositions was disproportionately distributed among the Plaintiffs. Furthermore, the court sees no reason that Plaintiffs' familial relationship should, as Defendants urge, affect the court's analysis of the costs they must pay. Although Cody and Tiffany are Mrs. Treat's children, each plaintiff is a grown adult with an independent source of income. Moreover, the mere fact that Plaintiffs' claims are interrelated does not mean that each of them was equally involved in litigating the suit. Two of the three plaintiffs' depositions comprised over 75% of the deposition costs, and the court believes that the disproportionate breakdown of the deposition costs between the plaintiffs reflects their relative involvement in the suit and overcomes the presumption of joint and several liability.

Costs should therefore be taxed against Plaintiffs in accordance with the percentage of the deposition costs for which each plaintiff was responsible. And, because the deposition costs dwarf the other costs in comparison, this individual liability will extend to all costs, including those not associated with Plaintiffs' depositions.[22] Thus, at this point in the analysis, Mrs. Treat is responsible for 41.7% of the total costs, Cody is responsible for 33.7%, and Tiffany is responsible for 24.6%. However, there remains one final argument to address.

### C. Plaintiffs' Indigence

Plaintiffs' third and final argument is that they are unable to pay the costs sought from them due to financial hardship, or indigence. In order to be absolved from the obligation to pay costs to the prevailing party because of indigence, the losing party bears the burden of providing

---

[22] Although it would be possible to hold Plaintiffs jointly and severally liable for costs not related to the depositions and individually liable for costs related to the depositions, such distinctions would unnecessarily complicate Defendants' attempts to collect their costs.

the district court with "sufficient documentation" to support a finding that the losing party is "incapable of paying the court-imposed costs at this time or in the future." *Riviera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006) (internal quotation marks omitted). The documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses. *Id.* Furthermore, as Defendants point out, a finding of indigence does not automatically shield Plaintiffs from the imposition of costs against them. *McGill v. Faulkner*, 18 F.3d 456, 458 (7th Cir. 1994). In making its decision, the court should consider "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by [the] case." *Id.* No one factor is determinative. *Id.*

Each of the plaintiffs has provided an affidavit listing his or her income, assets, and expenses, and all of them assert that paying the costs taxed against them would be a "burden and hardship." Defendants do not contest the validity or veracity of these affidavits, and they will therefore be taken at face value.

Mrs. Treat has been unemployed since May 15, 2009 and receives $1707 per month, including $397 in unemployment.[23] She has "minimal equity" in her home, owes more on her vehicles than they are worth, and has $788 in her bank account.[24] Her regular monthly expenses are $2702.[25] "Without the income of [her] Husband, who is not a party to this lawsuit, [she] would not be able to meet [her] monthly financial obligations."[26]

---

[23] Aff. of Jill. L. Treat 1 (Doc. No. 155-2).
[24] Aff. of Jill. L. Treat 1-2 (Doc. No. 155-2).
[25] Aff. of Jill. L. Treat 1 (Doc. No. 155-2).
[26] Aff. of Jill. L. Treat 1 (Doc. No. 155-2).

Tiffany is a single mother who is employed as a part-time checker at a supermarket.[27] She works at minimum wage between 18 and 30 hours per week.[28] She receives about $150 per month in food stamps and about $90 per week in child support.[29] Her monthly rent is $450, and her utility bills range between $140 and $180 per month.[30] She owns no vehicles and has no bank account.[31]

Cody is employed at KFM, Inc., earning $13.85 per hour.[32] He takes home about $760 every other week after paying $230 in child support.[33] He also supports his wife and their child.[34] His wife, who is not a party to this litigation, earns about $300 per week.[35] Cody and his wife own a 1999 Ford Taurus.[36] They also own a 2006 Chevrolet Trail Blazer on which more is owed than it is worth.[37] Cody has a joint bank account with his wife, but no savings account.[38] He lives with his in-laws "to make ends meet."[39] His monthly bills are about $1200, excluding gas and miscellaneous expenses.[40]

Based on these affidavits, the court is convinced that Tiffany is indigent but does not believe that Mrs. Treat and Cody have carried the burden of showing their respective indigence. Whereas Tiffany is a single parent on food stamps working a minimum wage job, Mrs. Treat and

---

[27] Aff. of Tiffany L. Johnson 1 (Doc. No. 155-2).
[28] Aff. of Tiffany L. Johnson 1 (Doc. No. 155-2).
[29] Aff. of Tiffany L. Johnson 1 (Doc. No. 155-2).
[30] Aff. of Tiffany L. Johnson 1 (Doc. No. 155-2).
[31] Aff. of Tiffany L. Johnson 1 (Doc. No. 155-2).
[32] Aff. of Cody W. Treat 1 (Doc. No. 155-2).
[33] Aff. of Cody W. Treat 1 (Doc. No. 155-2).
[34] Aff. of Cody W. Treat 1 (Doc. No. 155-2).
[35] Aff. of Cody W. Treat 1 (Doc. No. 155-2).
[36] Aff. of Cody W. Treat 1 (Doc. No. 155-2).
[37] Aff. of Cody W. Treat 1-2 (Doc. No. 155-2).
[38] Aff. of Cody W. Treat 2 (Doc. No. 155-2).
[39] Aff. of Cody W. Treat 1 (Doc. No. 155-2).
[40] Aff. of Cody W. Treat 1 (Doc. No. 155-2).

Cody both have income-earning spouses. Moreover, Cody has a relatively well-paying job, and although Mrs. Treat is currently unemployed, she receives income from her husband to meet her monthly needs, and is likely to be viewed as a highly employable individual given her experience in the Special Finance Department of Tom Kelley Buick Pontiac GMC. Thus, even if the costs asserted against Mrs. Treat and Cody are a heavy burden now, the court is not convinced that these plaintiffs will be incapable of paying the costs in the future. The court will therefore regard Tiffany as indigent, but will not regard Cody and Mrs. Treat as indigent.

The question now becomes whether to further reduce the costs being taxed against Tiffany and, if so, by how much. The total amount of costs as they presently stand, taking into account the $6000 reduction in unnecessary video-recording costs already discussed, is $9570.56.[41] Tiffany is currently liable for 24.6% of that amount, or $2354.36.[42] Although Plaintiffs did lose their case at summary judgment and did not have a very close case, the case did not appear to have been brought in bad faith. Given these considerations and Tiffany's lack of financial wherewithal, the court finds that taxing $2354.36 in costs against Tiffany would be inequitable, and therefore holds that Defendants may collect no more than $500 from her. This amount, the court believes, is not so great as to be a threat to Tiffany's livelihood, but still serves to promote a policy encouraging litigants to give due regard to the financial consequences associated with bringing lawsuits.

---

[41] $15,570.56 initial cost amount - $6000 reduction for unnecessary video recording = $9570.56.

[42] $9570.56 x 0.246 = $2354.36

## SUMMARY

The following table summarizes the cumulative effect of the court's holdings in this order:

| Plaintiff | Maximum Amount of Costs that May Be Recovered from Plaintiff [43] |
|---|---|
| Mrs. Treat | $3990.92 |
| Cody | $3225.28 |
| Tiffany | $500.00 |
| TOTAL | $7716.20 |

---

[43] Calculated by subtracting the costs associated with unnecessarily video-recording Plaintiffs' depositions ($6000) from the initial amount taxed against Plaintiffs ($15,570.56), and then multiplying the difference ($9570.56) by the percentage of the initial deposition costs for which each plaintiff was responsible.

## CONCLUSION

On the basis of the foregoing, Defendants' request for costs [DE 153] is hereby granted in part, and Plaintiffs' Objection to Bill of Costs [DE 155] is therefore GRANTED IN PART and DENIED IN PART.


Entered: September 13, 2010.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court